MECHANICS MUTUAL LOAN ASSOCIATION *vs.* ALBERTSON
and others.

1. The filing the written contract provided for by the second section of the mechanics' lien law, only protects the building from liens for work or materials furnished to the contractor. If the owner orders materials or employs mechanics on his own account, a lien attaches for the same.

2. The mechanics' lien law was not intended to protect purchasers or mortgagees, but mechanics and material-men only. Many of its provisions are necessarily, to effect its object, opposed to the policy of the registry acts of this state, and make it impossible for a mortgagee or purchaser, at certain times, to ascertain what encumbrances exist. The express provisions of this act cannot be construed against the plain meaning of the words, so as to carry out the policy and intention of the registry acts.

---

These two causes were argued together, upon the pleadings and proofs, the questions and the facts upon which they depend being the same in both causes.

*Mr. Shreve* and *Mr. J. Wilson,* for complainants.

*Mr. E. T. Green,* for Fish and Green.

*Mr. Holt,* for McPherson and others.

THE CHANCELLOR.

The claims of the defendants upon the property in the mortgages of the complainants, which they seek to foreclose, are claims under the mechanics' lien law. The question arises upon the effect of filing a building contract under the provisions of the second section of that law.

Albertson, the mortgagor, by a written contract made with John Farrel on the 26th day of January, 1871, and filed in the office of the clerk of Mercer county on the same day, employed and contracted with Farrel to build eight houses on eight adjoining lots of Albertson, in the city of Trenton.

In this contract he agreed to provide, at his own expense, all the materials for these buildings, and to deliver them, completely finished, by the 25th of March then next.

When he began to execute the contract, Farrel had neither money nor credit to procure the materials, and, at his request, Albertson went to the defendants, material-men in Trenton, and directed them to furnish the materials on his account. They did so furnish them on the credit of Albertson, and charged the same to him.

Albertson being a member of the association of each of the complainants, applied to each for a loan of $1600 on four of these houses and lots, and executed a separate mortgage to each, dated June 26th, 1871, to secure the loan of $1600. The four lots in each mortgage were different from those in the other mortgage.

The complainants and their solicitor, at the making of the loan, knew of the contract, and that it was filed, and knew that Farrel erected the buildings, and supposed that he furnished the materials, and that there could be no lien on them for any work or materials provided for in the contract on file.

The defendants claim that Albertson, as the owner of the land, had the right to purchase on his own credit, materials for buildings on them, and that the land was subject to a lien for these, without regard to any contract.

The second section of the lien law provides that when a building is erected by contract in writing, the building and land shall be liable to the contractor alone for materials furnished in pursuance of said contract, provided the contract be filed before the materials are furnished. In this case the contract was filed before the materials were furnished, except, perhaps, a very small part of them.

But the materials were not furnished pursuant to the contract. That required Farrel to furnish them. They were furnished by Albertson. It is clear that the object of the provision in question was to protect the owner, who, by filing his contract, was freed from all claims by mechanics or material-men, and could thus safely make his payments according

to contract. Mechanics and material-men must take notice of such filing, and that by it they are deprived of their lien on the building, and must see to it that the contractor pays or secures his indebtedness to them. The object of it was not to secure a mortgagee or purchaser, and its construction cannot be guided by such supposed intention. If its provisions, by their proper and natural meaning, have that effect, the mortgagee and purchaser are entitled to the benefit of it, because they must be held to have acted on the faith of such provision.

There is nothing here that requires a construction different from the proper and usual meaning of the words of the act. They only protect it from a lien for materials furnished in pursuance of the contract. When the contractor furnishes such materials, and the owner pays him for them, it is right that the owner and the building should be free. When the contractor does not furnish them, but a stranger does, it is not right or equitable that the building should be freed from the lien of the material-men. It would be against the policy of the act, as well as the object and intention of this section. If no effect is given to the words " in pursuance of the contract," then the section would make the building liable to the contractor for the materials furnished by another, on the credit of the owner. The construction which gives effect to the words of the section in their usual import, rejecting none, comports best with the object of the act and of this section, and is not inconsistent with any other provision.

The counsel of the complainants chiefly urge that such construction would be unjust to mortgagees and purchasers, who rely on the recording of the contract, and cannot be expected to inquire whether the buildings erected were erected according to the filed contract, or by a new arrangement, in disregard of it.

This act was not intended for the protection of mortgagees or purchasers as a part of the system of the registry law, so long part of the state policy, but, in utter disregard of it, makes lands liable for debts which need not be registered for a year after contracted, without any possibility of a purchaser

or mortgagee finding out with certainty whether there are such claims. The mechanics and material-men could not be efficiently protected without some risk to the mortgagee and purchaser, and the legislature, when one must suffer, have chosen to protect the former at the expense of the capitalist. It has, in this case, thrown the burden of inquiring whether the work is done or materials furnished in pursuance of the contract upon the mortgagee or purchaser, as in the other case it has required the mechanic and material-man to ascertain whether a contract is filed before each day's work is done and each load of material delivered.

A wiser and more just law than the mechanics' lien law can be imagined, even if its enactment could not be procured. But it is the duty of the court to administer the law as it exists, and to construe it as its intention is shown by its provisions.

In these cases the claims of the defendants for materials must be paid before the amounts due to the complainants on their mortgages.